Royal Tweedy BROWN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15532.

United States Court of Appeals Eighth Circuit.

Oct. 19, 1956.

Edward W. Fredrickson, St. Louis, Mo., for appellant.

282

Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN and WHITTAKER, Circuit Judges.

SANBORN, Circuit Judge.

Royal Tweedy Brown was charged with having, on July 11, 1955, knowingly transported, by automobile, a woman from the City of St. Louis, Missouri, to the County of St. Clair, Illinois, for an immoral purpose, in violation of Section 2421, Title 18 U.S.C., which makes it an offense to transport in interstate commerce "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose * * *."

Brown entered a plea of not guilty. The court, at his request, appointed counsel to represent him. The case was tried to a jury. At the close of the evidence, the defendant moved for a judgment of acquittal. The motion was denied. The jury returned a verdict of guilty.

The court, after denying a motion of the defendant for acquittal notwithstanding the verdict or, in the alternative, for a new trial, sentenced him to imprisonment for four years, and thereafter granted him leave to prosecute this appeal from the sentence in forma pauperis.

It is argued on behalf of the defendant that his motion for a judgment of acquittal should have been granted on the grounds (1) that the evidence was insufficient to establish the interstate transportation of the woman, and (2) that it was insufficient to show that she was transported for an "immoral purpose" within the meaning of the statute.

The Government relied upon the testimony of the woman named in the Information, to show that she was transported from Missouri to Illinois for an immoral purpose. She testified, in substance, that on July 10, 1955, she was returning by bus from Hot Springs, Arkansas, to Milwaukee, Wisconsin, where she was then living and working; that she arrived at the Trailways bus terminal or station on

Broadway and Lucas Streets in St. Louis, Missouri, at about 11:30 p. m., where she was to transfer to another bus for Milwaukee; that she missed that bus; that about 1 a. m. of July 11, 1955, the defendant, who was sitting beside her in the bus depot, started a conversation; that she told him about missing her bus and of her anxiety to get back to work; that he suggested that she ride with him to Springfield, Illinois; that he said that he had some orders to pick up in Springfield, and assured her that his intentions were honorable. She testified that she looked at his credentials, consisting of his driver's license, credit cards, Triple A and oil company cards; that she believed she could catch at Springfield the bus for Milwaukee which she had missed at St. Louis; that she got into the defendant's automobile, which was parked about half a block from the bus station and appeared to be a gray or blue 1948 Buick; that the defendant carried her luggage and put it in the trunk of the car; that they drove across a bridge which she thought was the Eads Bridge but may have been another bridge; that they went through East St. Louis and about five miles out, where the defendant turned off onto a dirt road, threatened, choked, struck and raped her, and then drove her back to the bus depot in St. Louis, Missouri.

The woman's testimony, on cross-examination and redirect examination, as to what bridge was crossed and what she observed which would substantiate her belief that she was transported from St. Louis, Missouri, across the Mississippi River, into Illinois, was unsatisfactory; but her evidence was that they drove across a bridge, and that it was a downtown bridge, a long bridge, and a short distance from the bus terminal. She testified that she had passed through East St. Louis about a year before, and knew from that experience that in the early morning of July 11, 1955, she was driven by the defendant through East St. Louis. The trial judge properly told the jury in his charge that if her testimony that, after she got in the defendant's

car, they went a short distance until they came to a long bridge, was true, "the bridge had to be across the Mississippi River into Illinois."

The defendant testified, in his own behalf, to the effect that, while he had met the woman in the bus station on July 11, 1955, and tried to make a date with her, he did not take her anywhere in his car, and saw her leave the station with a man.

 Our examination of the evidence relative to the issue of interstate transportation has convinced us that the question whether the woman was transported from Missouri into Illinois by the defendant was one of fact for the jury. The record shows that the question was fully argued to the jury by counsel, and was fairly submitted to the jury by the trial judge. Where different inferences reasonably may be drawn from evidence, it is for the trier of the facts to determine which inference shall be drawn.

Counsel, appointed for the defendant by the District Court, has faithfully and competently represented him both during his trial and on this appeal, and has persuasively argued that the language of the statute which makes the interstate transportation of a woman "for the purpose of prostitution or debauchery, *or for any other immoral purpose*," an offense should not be construed to cover a case such as that before us, which involves a noncommercial, isolated, single immoral transaction. The argument here bears a strong resemblance to that made on behalf of the defendants in Caminetti v. United States (Diggs v. United States, and Hays v. United States), 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, in an unsuccessful attempt to secure a judicial determination that Congress, in enacting the White Slave Traffic Act of June 25, 1910, 36 Stat. 825, intended to penalize only those who transported women in interstate commerce for a mercenary immoral purpose. The language of Section 2421, Title 18 U.S.C., in our opinion, covers the interstate transportation, without pecuniary motive, of a woman with intent to have illicit relations with her by force

or otherwise. As the Supreme Court said in the Caminetti case, at page 486 of 242 U.S. at page 195 of 37 S.Ct., "To say the contrary would shock the common understanding of what constitutes an immoral purpose when those terms are applied, as here, to sexual relations."

Our conclusion is that the District Court did not err in refusing to direct a verdict of acquittal.

The judgment appealed from is affirmed.