**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Erick MITCHELL, Defendant-Appellant.**

**No. 85–1349.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1985.

Decided Dec. 10, 1985.

ployees for a certain period. *See, e.g., Vallone,* 755 F.2d at 522.

William D. Stiehl, Jr., Stiehl & Stiehl, Belleville, Ill., for defendant-appellant.

Bruce E. Reppert, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCH-BACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.

CUMMINGS, Chief Judge.

Defendant Erick Mitchell appeals his conviction for kidnapping, violating the Mann Act, and conspiracy. For the reasons set out below, we affirm his conviction.

## I

The incident in question occurred in the early morning hours of July 6, 1983. According to Cheryl Chambers, she and her friend Trina Dively had gone to a restaurant in St. Louis at 10:30 PM the evening of July 5, 1983. They met several other friends at the restaurant, and they talked, drank, and danced until approximately 2:30

AM. Chambers and Dively, along with another friend, Jim Crowder, subsequently left the restaurant and headed towards their car. Before they could reach Chambers' car, however, a car with four young adult men pulled up, and one of the four men, brandishing a gun, forced Chambers into their car. The four men took Chambers across a bridge between St. Louis, Missouri, and East St. Louis, Illinois. While en route, the assailants physically struck Chambers, threatened her life, told her she would be raped by all four of them, and partially pulled down her pants. They stopped near some railroad tracks in East St. Louis, at which time the assailants pulled Chambers out of the car and removed the rest of her clothes. Defendant pulled his pants off and tried to pull Chambers' legs apart, while another one of the assailants pulled Chambers' ears to force her head towards his midsection. Defendant denied all of this, and testified that Chambers voluntarily entered the car, requested the driver to pull over, exited the car, and asked for payment before she would have sex with the four men.

At this point, Arthur Herwick, a railroad policeman, stumbled onto the group. The assailants fled in their car. Herwick gave Chambers his coat, since she was naked at the time, and radioed a description of the car. Acting on this information as well as information provided by Crowder, who had telephoned the police immediately after Chambers had been abducted, the police were able to apprehend the assailants as they crossed the bridge back into St. Louis. Chambers was then brought to the scene to identify the four men as her assailants, which she did. Defendant and the other three assailants were arrested and charged with attempted forcible rape, attempted forcible sodomy, and kidnapping under Missouri law. On the same date, a complaint was filed in the United States District Court for the Southern District of Illinois by the Federal Bureau of Investigation charging the four assailants with kidnapping. On July 29, 1983, the United States Attorney's Office moved to dismiss the federal charges and defer to the state prosecution. An order was entered on August 1, 1983, dismissing those charges.

On June 22, 1984, all of the assailants were acquitted in a joint trial in state court in Missouri. Significantly, defendant Mitchell's confession was not received in evidence.[1]

On August 31, 1984, all of the assailants were indicted by a federal grand jury for

---

1. There were two potential problems if the State of Missouri attempted to introduce Mitchell's confession, which inculpated his co-defendants, in the joint trial of Mitchell and his three co-defendants. The first potential problem was that the admission of Mitchell's confession might violate the Sixth Amendment confrontation rights of the co-defendants inculpated by the confession. *Bruton v. United States,* 391 U.S. 123, 128, 88 S.Ct. 1620, 1623, 20 L.Ed.2d 476. This error would not have been cured by a cautionary instruction to the jury that they should consider the confession as evidence against Mitchell only. *Id.* However, there would not have been any Sixth Amendment violation if Mitchell took the stand and was subject to "full and effective" cross-examination. *Nelson v. O'Neil,* 402 U.S. 622, 627, 629–630, 91 S.Ct. 1723, 1726, 1727, 29 L.Ed.2d 222.

Even assuming that Mitchell was available and willing to testify at the state trial so that there was no constitutional problem, there was still a second potential problem: Mitchell's out-of-court confession, made out of the presence of his co-defendants and after the commission of the crime, was hearsay as to his co-defendants inculpated by the confession, and no hearsay exception appears to apply. *State v. Browner,* 587 S.W.2d 948, 955 (Mo.Ct.App.1979); *State v. Rayner,* 549 S.W.2d 128, 131 (Mo.Ct.App.1977); *State v. Day,* 531 S.W.2d 780, 781 (Mo.Ct.App. 1975). However, unlike the Sixth Amendment problem noted above, the hearsay problem might have been cured by a cautionary instruction to the jury that they should consider the confession as evidence against Mitchell only. *Nelson,* 402 U.S. at 624, 625, 91 S.Ct. at 1724, 1725.

Because the record before us does not disclose whether Mitchell took the stand in the state trial, and the state apparently did not attempt to introduce the confession at trial, we cannot definitively conclude that the confession could not have been received in evidence at that trial. But given our limited knowledge of the state proceedings, the foregoing potential evidentiary problems seem to explain the failure of the state to introduce the confession in the joint state trial, and to prompt the federal government's resulting decision to prosecute the defendants in three federal trials.

the Southern District of Illinois and charged with kidnapping, violation of the Mann Act, and conspiracy. Defendant Mitchell was indicted separately. The indictments followed the receipt of a letter from the Assistant Attorney General of the Criminal Division of the United States Justice Department approving the successive federal prosecution, pursuant to the Department's *"Petite* policy." [2]

Defendant moved to dismiss the indictment, in part because he claimed that this was a selective and discriminatory prosecution based on race. In connection with this motion, defendant filed a motion to compel the discovery of various internal prosecution documents. The district court denied both motions.

Defendant was tried by a jury and found guilty of all three counts on October 25, 1984, after a four-day trial. Defendant's confession, which was not introduced in his state trial (n. 1 *supra* ), was introduced in this federal trial. He was sentenced to fifty years for the kidnapping charge. He also received five-year terms on the Mann Act and conspiracy charges, to run concurrently with each other and concurrently with the kidnapping sentence.[3] On appeal, defendant raises various issues concerning the scope of the Mann Act, double jeopardy, selective prosecution, and his sentence.

## II

In pertinent part the Mann Act provides:

§ 2421. Transportation generally

Whoever knowingly transports in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, *or for any other immoral purpose*, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or

Whoever knowingly procures or obtains any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States, in going to any place for the purpose of prostitution or debauchery, *or for any other immoral purpose*, or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**2.** The *"Petite* Policy" is an internal statement by the United States Attorney General that sets forth guidelines for federal prosecutors regarding dual and successive federal criminal prosecutions. The statement was first announced by the Attorney General in 1959, and the Supreme Court discussed it in the case of *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490. The policy "precludes the initiation ... of a federal prosecution following a state prosecution unless there is a compelling federal interest supporting the dual prosecution." The purposes of the policy are to insure the efficient use of the Department's resources and to avoid unfairness that might result from multiple prosecutions for the same acts. The policy requires that the federal prosecutor obtain authorization from the appropriate Assistant Attorney General

before initiating the dual or successive prosecution. Such authority will be granted if "the state proceeding left substantial federal interests demonstrably unvindicated" and a conviction with an enhanced sentence is anticipated in the federal prosecution. "Dual Prosecution and Successive Federal Prosecution Policies," United States Attorney Manual § 9–2.142 (1984). See also *United States v. Ng,* 699 F.2d 63, 66 n. 3 (2d Cir.1983), summarizing the *Petite* policy.

**3.** Mitchell's three companions were found guilty in two subsequent federal trials and received substantial sentences. Their three individual appeals to this Court were consolidated and are being handled separately from Mitchell's appeal.

§ 2422. Coercion or enticement of female

Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, for the purpose of prostitution or debauchery, *or for any other immoral purpose*, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. §§ 2421, 2422 (emphasis supplied).

Defendant contends that the interstate transportation of a woman for the purpose of rape or sodomy is not an "immoral purpose" proscribed by the Mann Act on the ground that the Mann Act proscribes only those immoral purposes which are habitual or impose an immoral status of some duration on a woman, whereas a rape is a one-time event which does not alter a woman's moral status. However, the courts have consistently rejected such a crabbed interpretation of the phrase "immoral purpose." The Supreme Court has noted that the phrase "immoral purpose" is not limited to those activities that give rise to commercial gain. *Caminetti v. United States*, 242 U.S. 470, 486, 37 S.Ct. 192, 194, 61 L.Ed. 442. Several courts have specifically held that rape is an immoral purpose within the purview of the Mann Act and in each case affirmed the conviction of a defendant who transported a woman across state lines for the purpose of raping her. *Devault v. United States*, 338 F.2d 179 (10th Cir.1964); *Reamer v. United States*, 318 F.2d 43 (8th Cir.1963), certiorari denied, 375

U.S. 869, 84 S.Ct. 129, 11 L.Ed.2d 95; *Brown v. United States*, 237 F.2d 281 (8th Cir.1956). Moreover, this issue is so well established that in two recent cases, courts of appeals affirmed the Mann Act conviction of a defendant who transported a woman across state lines for the purpose of raping her without any discussion whatsoever of whether the Mann Act proscribed such conduct. *United States v. Hastings*, 739 F.2d 1269 (7th Cir.1984), certiorari denied, —— U.S. ——, 105 S.Ct. 1199, 84 L.Ed.2d 343; *United States v. Link*, 728 F.2d 1170 (8th Cir.1984). Significantly, in two of the cited cases the defendant picked up the woman in St. Louis, Missouri, and then crossed the Mississippi River and raped her in Illinois, which precisely matches the geographical facts in the instant case. *Link, Brown.* In a third case, the defendants picked up several women in East St. Louis, Illinois, and then drove to St. Louis, Missouri, where they repeatedly raped and sodomized the women. *Hastings.*

█ Defendant cites only one case, *United States v. McClung*, 187 F.Supp. 254 (E.D.La.1960), in an attempt to support his proposition. In *McClung*, the defendant was indicted for transporting a woman across state lines for the purpose of engaging in sexual intercourse with her. The court held that the Mann Act did not proscribe a single act of consensual sexual intercourse, in part reasoning that the phrase "immoral purpose" should be restricted to "a limited category, encompassing only the more notorious or vicious sexual immoralities." *McClung*, 187 F.Supp. at 257. While a single act of consensual sexual intercourse may not be in this limited category, rape surely is, and hence *McClung* does not conflict with our decision today. Moreover, no other courts to our knowledge have relied on *McClung* to support such a narrow construction of the Mann Act as defendant urges upon us. In light of this overwhelming amount of case law, we hold that rape is an "immoral purpose" within the purview of the Mann Act. The district court's jury instructions to that effect were therefore not in error.

## III

■ Defendant next contends that his indictment, trial, and conviction by the United States on charges stemming from the same events which formed the basis of the charges on which he was acquitted in state court violate his constitutional protection against double jeopardy. However, the Supreme Court has consistently held that a conviction or acquittal by one sovereign does not constitute prior jeopardy for purposes of prosecution by the other sovereign. *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (state prosecution followed by federal prosecution does not violate the Double Jeopardy clause); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (federal prosecution followed by state prosecution does not violate the Double Jeopardy clause). By every indication, this dual sovereign doctrine remains alive and well. See, *e.g., United States v. Wheeler,* 435 U.S. 313, 316–317, 98 S.Ct. 1079, 1082, 55 L.Ed.2d 303 (citing both *Abbate* and *Bartkus* with approval and repeating their holdings). Defendant's prosecution by the United States, following his acquittal in state court, does not violate the Double Jeopardy clause.

## IV

■ Defendant next contends that it was error for the district court to refuse to grant his motion to compel the discovery of various government documents relating to the initial decision to dismiss the original complaint and the subsequent decision to prosecute the defendant. Defendant appears to be making two related claims in connection with these requested documents. First, defendant claims that the government violated its own *"Petite* Policy" (n. 2 *supra* ) and that this fact alone invalidates the government's indictment and subsequent prosecution. Second, defendant claims that even if the government's failure to meet its own *"Petite* Policy" does not automatically invalidate this prosecution, that factor plus the black composition of the state jury and the defendant's own black race indicate that the federal government selectively prosecuted the defendant on a racial basis. On this second claim, defendant implicitly states that the United States Attorney's Office was aware of the racial factors in the Missouri trial and believed that a federal jury might reach a different result. It is not clear from the briefs and the record whether defendant now assails the supposed *"Petite* Policy" violation or just the claim of selective prosecution, or both of these claims, but for purposes of this appeal we will discuss both claims. In reviewing these claims, this Court is mindful that the decision whether to grant or deny a motion for discovery is within the district judge's discretion, and hence reversal is only warranted if the district judge abused his discretion. See *United States v. Battaglia,* 410 F.2d 279, 280 (7th Cir.1969), certiorari denied, 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed.2d 97; *United States v. Pope,* 409 F.2d 371, 374 (7th Cir.1969).

■ To the extent that defendant's motion to compel discovery relates to a claim that the prosecution should be invalidated solely because the government did not meet its *"Petite* Policy," the claim lacks any legal basis, and the district court acted within its discretion to deny the motion to compel discovery. It is not at all clear that the government violated that policy here, but regardless of whether it did or not, the *"Petite* Policy," since it is an internal guideline for the exercise of prosecutorial discretion, does not create a substantive right for the defendant which he may enforce, and is not subject to judicial review. *United States v. Ng,* 699 F.2d 63, 71 (2d Cir.1983); *United States v. Howard,* 590 F.2d 564, 567–568 (4th Cir.1979), certiorari denied, 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 795; *United States v. Frederick,* 583 F.2d 273, 274–275 (6th Cir.1978), certiorari denied, 440 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 80; *United States v. Thompson,* 579 F.2d 1184, 1189 (10th Cir.1978) (*en banc* ), certiorari denied, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243; *United States v. Wallace,* 578 F.2d 735, 740 n. 4 (8th Cir. 1978), certiorari denied, 439 U.S. 898, 99

S.Ct. 263, 58 L.Ed.2d 246; *United States v. Nelligan*, 573 F.2d 251, 255 (5th Cir.1978); *United States v. Hutul*, 416 F.2d 607, 626–627 (7th Cir.1969), certiorari denied, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504. "To hold the policy legally enforceable would be to invite the Attorney General to scrap it, which would hardly be in the public interest." *Ng*, 699 F.2d at 71.

Defendant's reliance on *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (*per curiam* ) for the proposition that the *"Petite* Policy" creates a substantive right legally enforceable by the defendant is misplaced. In that case, the Court did remand the case to the district court with instructions to dismiss the indictment because the *"Petite* Policy" was not met. However, the Court did this because the Solicitor General sided with the defendant and urged the Court to do so. The opinion reasoned that "[t]he defendant ... should receive the benefit of the policy whenever its application is urged by the Government." *Rinaldi*, 434 U.S. at 31, 98 S.Ct. at 86. Nothing of the kind is urged by the government in the instant case.

 Even if defendant's motion is aimed at a claim of selective prosecution, the district judge did not abuse his discretion in denying the motion. A claim of selective prosecution is judged by ordinary equal protection standards. *Wayte v. United States*, — U.S. ——, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547. In order to make a *prima facie* case of selective prosecution, the defendant must show both that he "had been singled out for prosecution while others had not been prosecuted and that the Government's discriminatory selection was based upon an impermissible ground." *United States v. Heilman*, 614 F.2d 1133, 1138 (7th Cir.1980), certiorari denied, 447 U.S. 922, 100 S.Ct. 3014, 65 L.Ed.2d 1114; see also *Wayte*, 105 S.Ct. at 1531. In the context of the instant case—a motion to compel discovery—the defendant need not make a complete *prima facie* case; rather, he need only show a "colorable basis" for the claim. *Wayte*, 105 S.Ct. at 1539 (Marshall, J., dissenting, citing the following courts of appeals cases: *United States v. Murdock*, 548 F.2d 599, 600 (5th Cir.1977); *United States v. Cammisano*, 546 F.2d 238, 241 (8th Cir.1976); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974); *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir.1973)). In order for the defendant to show a "colorable basis" entitling him to discover the requested government documents, he must introduce "some evidence tending to show the existence of the essential elements of the defense." *Berrios*, 501 F.2d at 1211. In the instant case, there is no evidence whatsoever that the defendant was singled out for prosecution because of his race. This conclusion is buttressed by the fact that the government was able to and indeed did introduce the defendant's confession at the federal trial, while the state did not introduce this confession at the state trial in which the defendant was tried jointly with the other assailants (n. 1 *supra* ).

## V

Defendant's final contention is that the district judge abused his discretion in sentencing defendant to fifty years for the kidnapping charge, and five years each for the Mann Act and conspiracy charges, to run concurrently with each other and with the kidnapping charge. We disagree.

 The trial judge has broad discretion with respect to the imposition of a sentence within the statutory limits. *United States v. Brubaker*, 663 F.2d 764, 768 (7th Cir.1981). A sentence will not be altered on appeal merely because it is too severe, unless the trial judge failed to exercise any discretion whatsoever in imposing the sentence. *Id.*

 In the instant case, Judge Beatty acted within this broad discretion. The sentence Mitchell received is substantially less than the statutory maximum of life imprisonment plus ten years and consequently is within statutory limits. 18 U.S.C. §§ 371, 1201(a), 2421, 2422. Defendant claims that the judge abused his discretion because given defendant's lack of prior

criminal history and the testimony of his employer and neighbor as to his good character, the sentence was too severe. However, the record indicates that the judge was well aware of all these factors at the time of sentencing. He properly gave great weight to the goal of general deterrence, noting the numerous cases of this type where the victim was transported from St. Louis, Missouri, to Illinois and raped or murdered, and general deterrence is a valid sentencing factor so long as the sentence is not mechanistically imposed. *Id.* at 769. Although the judge placed heavy emphasis on general deterrence, we cannot say that he failed to exercise any discretion whatsoever in imposing the sentence.

Judgment affirmed.