UNITED STATES of America, Plaintiff-Appellee,

v.

Jerome KENNEDY, Defendant-Appellant.

No. 85–2645.

United States Court of Appeals, Seventh Circuit.

Argued May 8, 1986.

Decided Aug. 5, 1986.

Rolfe F. Ehrmann, Ehrmann & Gehlbach, Dixon, Ill., for defendant-appellant.

Daniel A. DuPre, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and ESCHBACH, Circuit Judges.

BAUER, Circuit Judge.

Defendant Jerome Kennedy was convicted of thirteen counts of knowingly and without authority selling 537,700 pounds of nonfat dried milk belonging to the Commodity Credit Corporation ("CCC") of the United States Department of Agriculture ("USDA") in violation of Title 18, U.S.C. § 641. The court sentenced the defendant to concurrent periods of five years imprisonment for all thirteen counts, administered a fine of $20,000, and ordered defendant to make restitution to the Commodity Credit Corporation in the amount of $267,-850. On appeal, the defendant presents three principal arguments. First, he argues that the evidence was insufficient to establish specific intent to deprive the government of the use or benefit of its property. Second, the defendant argues that he was denied effective assistance of counsel at trial because his attorney stipulated to testimony of a USDA employee. Third, the defendant argues that the trial court abused its discretion in sustaining the government's objection to hearsay testimony. We disagree with all three arguments and affirm the judgments of conviction.

## I.

The CCC, as a business arm of the USDA, purchases powdered milk and routes it to domestic or foreign aid programs, or stores it in various warehouses throughout the country. The CCC maintains a computer log of its milk purchases and the locations where it is stored. In addition, private industry may also purchase powdered milk which has become contaminated and thereby unfit for human use. Each week the CCC invites bids on off-conditioned milk sold strictly for use as animal feed.

On July 23, 1980, the CCC contracted with defendant, president of Green River Development Corporation ("Green River"), to store CCC owned powdered milk at the Green River facility near Dixon, Illinois. The contract did not contain any provision allowing defendant to sell powdered milk from his warehouse. The CCC, however, customarily allows warehousemen to sell small quantities (up to thirty bags) of milk damaged in the warehouse to allow a warehouseman to offset his liability to the

government for damaged milk. Under no circumstances is a warehouseman authorized to sell the government's milk.

The CCC requires a minimum net worth on the part of the warehouseman to ensure that the value of its commodity stored in the warehouse is protected. In August 1982, the CCC determined that defendant failed to demonstrate the minimal net worth requirement sufficient to maintain its storage contract. The CCC discontinued milk shipments to Green River and began to ship milk out of the facility, greatly reducing Green River's revenues.

In September 1983, the CCC received reports that defendant's milk showed indications of rodent, insect, and moisture contamination due to improper storage. This kind of contamination would preclude use of the milk for human consumption through the government aid programs. During the last quarter of 1984, the defendant filed bankruptcy. On December 10, 1984, the CCC stopped all payments to Green River.

About this time, the defendant called Frank Weiman, a CCC employee, and asked if he could purchase some of the powdered milk at Green River. Weiman explained the circumstances under which the defendant could buy milk and suggested that the defendant think it over and call Weiman back. Weiman never heard from the defendant again. In November, 1984, the defendant began selling damaged milk to George Mendez, owner of a railroad salvage business in Harvey, Illinois. The defendant made thirteen sales of powdered milk to Mendez for a total of $278,564. After discovering that some of the powdered milk was contaminated and that much of it was missing, the CCC sealed the buildings at Green River and placed the premises under surveillance.

On April 10, 1985 the defendant was indicted. The trial began July 8, 1985. The jury found the defendant guilty as charged and this appeal followed.

## II.

■ Defendant first argues that there is insufficient evidence to prove that he intended to deprive the government of the use or benefit of the powdered milk. In support of this argument, defendant contends that he acted in a good faith belief that he had an implicit right to mitigate his contract losses by selling the contaminated milk before it deteriorated further.

The defendant relies on *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), to support his claim that the government failed to prove the fraudulent intent necessary to support a criminal conviction. In *Morissette*, the defendant claimed a good faith belief that the property in question had been abandoned by the United States before he appropriated it. The court held that, although the defendant could still be liable civilly for the property appropriated, the claim would provide a proper defense to the embezzlement charge because the claim negated that aspect of fraudulent intent necessary to support a criminal conviction. The defendant argues that pursuant to the terms of the contract, Green River was responsible for all loss and injury to the powdered milk under its care. He argues that, as the milk diminished in value, he was concerned that he would be stuck for the "whole ball of wax" (Tr. 293) and that his conduct did not reflect a wrongful intent, but rather a desire to mitigate a growing loss. The evidence at trial, however, overwhelmingly established defendant's criminal intent in two specific ways. First, the financial problems defendant was faced with provided a powerful motive for him to turn the government's milk into quick cash for himself and his failing businesses. Second, the defendant misrepresented to Mendez that he received periodic authorization from the CCC to sell outdated milk. In addition, a good portion of defendant's testimony corroborated the government's case. For example, defendant acknowledged that he had sold the government's milk without authorization from the CCC. He also acknowledged that he paid none of the proceeds he received from Mendez to the CCC. Rather, defendant admitted that he spent

the money on luxury items and business expenses. The evidence shows that defendant's lack of equity in his business caused the CCC to begin to sever its ties with him. His poor maintenance of the Green River warehouse and storage of CCC's milk prompted the government to expedite its severance of the contract. This loss of revenue, together with defendant's other financial problems and his use of the money, show that he had both motive and intent to sell the powdered milk.

A defendant seeking to reverse a conviction for insufficient evidence "bears the heavy burden of showing that the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact of defendant's guilt beyond a reasonable doubt." *United States v. Balistrieri,* 778 F.2d 1226 (7th Cir.1985). Defendant does not meet this burden. When applying this standard, there is substantial evidence from which the jury could rationally have found that the defendant intended to deprive the CCC of the use and benefit of its milk.

### III.

■ Defendant's argument that he was denied effective assistance of counsel and thus due process of law because his attorney stipulated to testimony of a USDA employee must also fail. In support of this argument, defendant contends that his attorney's conduct brought the defendant's credibility into disrepute before the jury. Defendant argues that he testified under oath that he had had a number of telephone conversations with Elmer Forrest, a USDA employee, concerning his letters of termination and the impending termination itself of the storage contract. Yet, his attorney stated in open court that, were Forrest to testify, Forrest would state that he could not recall any such conversations. Defendant contends that this conduct constitutes a denial of effective representation.

The test for ineffectiveness of counsel is whether the counsel's conduct so undermined the proper functioning of the trial that the adversarial process was unjust.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that his counsel's actions or omissions at trial "fell below an objective standard of reasonableness," 104 S.Ct. at 2065–66, and that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. The decision to agree to the stipulation is a tactical one. It is well settled law that "counsel will not be regarded constitutionally deficient merely because of tactical decisions," *Griffin v. Wainwright,* 760 F.2d 1505, 1513 (11th Cir.1985), and that "the court must defer to counsel's perspective," *United States v. Appoloney,* 761 F.2d 520, 525, *cert. denied,* —— U.S. ——, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985).

It is evident that if the stipulation had not been made between the prosecution and the defense counsel, the government would have called Mr. Forrest and he would have testified that he could not recall any conversations with the defendant regarding the termination of the storage agreement. Defendant's counsel used good trial strategy and perhaps saved the defendant the harm that was almost certain to occur if Forrest were called to testify and then called the defendant a liar in open court.

### IV.

■ Defendant's argument that the trial court abused its discretion when it sustained the government's objection to hearsay testimony is without merit. The government objected to the following question put to Robert Maresh, a government witness, on cross-examination:

Do you ever remember any of a conversation between Mr. Kennedy and some of the inspectors when Mr. Kennedy commented about them getting their milk out of the warehouse?

(Tr. 212).

The basis of the government's objection was that the question called for a hearsay answer. On that ground the court sustained the objection.

Rule 801(c) of the Federal Rules of Evidence provides that, "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." On appeal, defendant contends that the court erred in its ruling since the hearsay, doctrine does not cover "verbal conduct." The defendant failed to raise this argument below and cannot now present this issue as a ground for reversal. *United States v. Nero*, 733 F.2d 1197, 1207 (7th Cir.1984).

For the foregoing reasons, the judgment of the district court is

AFFIRMED.