UNITED STATES of America, Plaintiff-Appellee,

v.

Bryant JONES, Curtis Young, and Donnis Glen Humphrey, Defendants-Appellants.

Nos. 85–1338, 85–1390 and 85–1391.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1986.

Decided Dec. 16, 1986.

R. Phillip Reed, Springfield, Ill., Margua McGull Billingsley, East St. Louis, Ill., Lesley Mitchell, St. Louis, Mo., for defendants-appellants.

Bruce E. Repert, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

These appeals bring before the court the judgments of conviction rendered against each of the defendants for kidnapping, violating the White Slave Traffic Act (Mann Act) and conspiracy. Mr. Jones was tried separately and, after a four-day trial, found guilty on all three counts. Mr. Young and Mr. Humphrey were tried in a joint trial and also found guilty of all three counts. Another defendant, Erick Mitchell, was tried separately and also found guilty on all three counts. This court has already affirmed Mr. Mitchell's conviction. *United States v. Mitchell*, 778 F.2d 1271 (7th Cir. 1985). We now affirm the convictions of his confederates.

## Facts

The facts established by the prosecution at trial are set forth at some length in Judge Cummings' opinion for the court in *Mitchell*, 778 F.2d at 1272–74. We shall limit ourselves in this rendition to a brief summary.

The incident in question occurred in the early morning hours of July 6, 1983 when two men abducted the victim, 18 year-old Cheryl Chambers, outside a restaurant on Laclede's Landing in St. Louis, Missouri. They forced her into an automobile already occupied by two other men. Ms. Chambers' companions immediately alerted the police.

The four defendants took their victim across a bridge between St. Louis, Missouri and East St. Louis, Illinois. While en route, the two men in the back seat attempted to disrobe and sexually assault the victim. As she screamed and struggled, she was "backhanded" by one of the subjects and told she was going to be raped by all four.

Once across the bridge and into Illinois, the defendants circled to a railroad building adjacent to the Eads Bridge. The victim was pulled from the car, dragged up an embankment and stripped. One of the defendants attempted to force the victim to commit the act of fellatio. As another

attempted to rape her, a railroad policeman arrived on the scene. The defendants then fled in their car.

The railroad policeman radioed the car's description and license number and, shortly thereafter, the St. Louis police stopped the defendants' car. All four men were in the car. Mr. Mitchell was naked from the waist down. A pair of men's jeans and undershorts were recovered from the scene together with a tobacco pouch that contained an identification card with Erick Mitchell's name. The police took Ms. Chambers to a hospital, but stopped en route so that she could identify the defendants as her attackers.

The State of Missouri charged all four men with forcible rape, attempted forcible sodomy and kidnapping. Federal authorities in Illinois also filed a complaint for kidnapping against the four men, but in deference to Missouri, later moved to dismiss the federal charges. On August 1, 1983, federal charges were formally dismissed.

The state tried all four men in a single trial. That trial ended on June 22, 1984 with the acquittal of all four defendants. The United States Attorney thereupon sought Petite Policy approval from the Justice Department for defendants' successive federal prosecution. On August 31, 1984, a g.·and jury returned a three-count indictment for conspiracy, kidnapping and a violation of the Mann Act against Mr. Jones, Mr. Young and Mr. Humphrey. 18 U.S.C. §§ 371, 1201(a)(1) & 2421. Erick Mitchell was separately indicted for the same offenses. On October 25, 1984, Mr. Mitchell was convicted of all three federal charges. Mr. Jones' conviction followed on November 8, 1984. On January 9, 1985, after a joint trial, Mr. Young and Mr. Humphrey were also convicted.

For kidnapping, the district court sentenced Mr. Young and Mr. Mitchell each to fifty years in prison and Mr. Jones and Mr. Humphrey to forty years each in prison. The court further ordered each defendant to serve two five-year terms on the Mann Act and conspiracy counts, concurrently both with one another and the kidnapping sentence. All four defendants appealed. As noted previously, this court has already affirmed Erick Mitchell's conviction. *United States v. Mitchell,* 778 F.2d 1271 (7th Cir.1985). The appeals of Mr. Jones, Mr. Young and Mr. Humphrey have been consolidated and are now before this court for review.

After studying the submissions of all the parties and examining the record, we have decided to address the issues in the following manner: I) those issues common to all defendants; II) those issues raised by particular defendants; III) sentencing matters.

I

Issues Common to All Defendants

A. *Double Jeopardy Clause*

Each of the three appellants maintains that his prosecution and conviction offends the Constitution's proscription against Double Jeopardy.[1] Mr. Jones and Mr. Young assert that their successive state and federal prosecutions for kidnapping violate Double Jeopardy Clause's guarantee against a second prosecution for the same offense after acquittal. Mr. Young and Mr. Humphrey assert that the Mann Act and kidnapping violations comprise but one offense because the transportation of the victim across state lines was incidental to the commission of the attempted rape. Thus, the appellants argue that the dual convictions violate Double Jeopardy's proscription against multiple punishment for a single

---

1. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Supreme Court has explained that the prohibition consists of three separate guarantees: (1) the guarantee against a second prosecution for the same of-fense after acquittal; (2) the guarantee against a second prosecution for the same offense after conviction; and (3) the guarantee against multiple punishment for a single offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *see United States v. Patterson,* 782 F.2d 68, 72 (7th Cir.1986).

offense. Both of these contentions are without merit.

### 1. Successive State and Federal Prosecutions

■ As Judge Cummings pointed out in *Mitchell*, the Supreme Court has consistently held that a conviction or acquittal by one sovereign does not constitute prior jeopardy for purposes of prosecution by the other sovereign. *Id.* at 1276; see *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (state prosecution followed by federal prosecution); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (federal prosecution followed by state prosecution). Dual sovereignty remains a vital doctrine. "[P]rosecutions under the laws of separate sovereigns do not, in the language of the Fifth Amendment, 'subject [the defendant] for the same offense to be twice put in jeopardy.'" *United States v. Wheeler*, 435 U.S. 313, 317, 98 S.Ct. 1079, 1083, 55 L.Ed.2d 303 (1978); *see also United States v. Schwartz*, 787 F.2d 257, 266 (7th Cir.1986). It is clear that appellants' successive state and federal trials do not offend the Constitution.

■ Nor are the successive prosecutions vulnerable to attack as violating the Petite Policy. The "Petite Policy" is an *internal* policy statement that was promulgated by the Attorney General in 1959 to establish uniform guidelines for dual and successive federal prosecutions. *See Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (discussion of Petite Policy by Supreme Court). The Petite Policy generally precludes the initiation of a federal prosecution following a state prosecution absent a "compelling federal interest." This internal directive is to ensure the ethical use of Justice Department resources and to avoid the unfairness that may result from multiple prosecutions for the same misconduct. A prosecutor may, however, obtain special approval for a successive prosecution in a case in which the state proceeding has left "substantial federal interests demonstrably unvindicated" and in

which an enhanced federal sentence appears likely. *See* "Dual Prosecution and Successive Federal Prosecution Policies," United States Attorney Manual § 9–2.142 (1984); *see generally Mitchell*, 778 F.2d at 1274 n. 2; *United States v. NG*, 699 F.2d 63, 66 n. 3 (2d Cir.1983). The policy simply does not provide a criminal defendant any judicially-enforceable substantive rights. *Schwartz*, 787 F.2d at 267; *Mitchell*, 778 F.2d at 1276–77.

### 2. Multiple Punishment

■ The claims of Mr. Young and Mr. Humphrey that their convictions under both the Mann Act and the Federal Kidnapping Act violate the proscription against multiple punishment are also flawed. To determine whether two violations comprise but a single offense, a court must first ascertain whether Congress intended the two violations to be separately punished. When legislative intent is not readily ascertainable, the court utilizes the test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to ascertain that intent. Under *Blockburger*, two offenses are considered distinct and separately punishable if each statutory provision requires proof of a fact that the other does not. *Id.* at 304; *United States v. Patterson*, 782 F.2d 68, 72 (7th Cir.1986).

■ The Mann Act and kidnapping violations are plainly separate and distinct offenses. Comparison of the elements of both offenses demonstrates the distinct nature of the offenses. The elements of kidnapping are: a knowing and willful transport, in interstate commerce, of an *unconsenting individual* for *any* purpose. *See* 18 U.S.C. § 1201. The elements of a Mann Act violation are: a knowing and willful transport, in interstate commerce, of *a woman or girl*, for purposes of *prostitution, debauchery, or any other immoral purpose*. *See* 18 U.S.C. § 2421. Thus, consent is a defense to kidnapping but not to a Mann Act charge. *Hattaway v. United States*, 399 F.2d 431, 433 (5th Cir.1968) (per curiam). Furthermore, *any* purpose,

moral or immoral, satisfies the kidnapping statute, *United States v. Healy*, 376 U.S. 75, 82, 84 S.Ct. 553, 557, 11 L.Ed.2d 527 (1964); *United States v. Atchison*, 524 F.2d 367, 369–71 (7th Cir.1975), whereas the essence of the Mann Act is the transport's *immoral* purpose.[2]

■ That the kidnapping may have been, as Mr. Young and Mr. Humphrey charge, but incidental to the rape attempt is wholly irrelevant. The Mann Act and kidnapping offenses remain distinct and separately punishable. The federal kidnapping statute, apparently unlike some of its state counterparts,[3] is broadly construed. *See United States v. Baker*, 419 F.2d 83, 89 (2d Cir.1969) (that the purpose sought to be furthered by a kidnapping is theft in no way precludes conviction under the Federal Kidnapping Act), *cert. denied*, 397 U.S. 971, 90 S.Ct. 1086, 25 L.Ed.2d 265 (1970); *see also United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964) (federal indictment's charges of kidnapping and air piracy remanded to district court for reinstatement on both counts); *United States v. Hasting*, 739 F.2d 1269, 1270–71 (7th Cir.1984) (three separate convictions for Mann Act, Federal Kidnapping Act and conspiracy offenses), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1199, 84 L.Ed.2d 343 (1985).

### B. *Reference to the Prior State Trial*

On the government's motion, the district court excluded all evidence of the defendants' prior acquittal and instructed the parties to refer to the prior trial simply as a "proceeding" or "testimony," to avoid any inference that the defendants were previously tried or convicted. The appellants challenge this ruling. Mr. Jones claims that evidence of the acquittal was relevant and necessary to refute the rape and sodomy charges. Mr. Young and Mr. Humphrey assert that the prosecutor made so many references to the prior proceeding—including reading testimony from the trial transcript—that the jury must have inferred that they were previously tried and convicted. The defendants contend that they should have been allowed to introduce evidence of their prior acquittal to rebut this inference and that the district court's refusal to allow them to do so violated their right to confront and cross-examine an adverse witness. They further maintain that the prosecutor's repeated references to the prior proceeding constituted prejudicial prosecutorial misconduct.

■ The district court's decision to exclude the acquittal evidence was not error. In general, evidence of a prior acquittal is only relevant in determining whether the prosecution is barred by double jeopardy or collateral estoppel. *United States v. Viserto*, 596 F.2d 531, 537 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). Evidence of an acquittal is not otherwise relevant "because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." *United States v. Kerley*, 643 F.2d 299, 300–01 (5th Cir.1981). Even if evidence of the acquittal were relevant, it may be excluded if its probative value is substantially outweighed by the likelihood of unfair prejudice. *See* Fed.R.Evid. 403. Appellate courts traditionally afford substantial deference to a district court's decision to exclude such evidence and will not reverse such a decision unless it is clear that the district judge has abused his discretion. *United States v. Bressler*, 772 F.2d 287,

---

**2.** Although Mr. Jones contends to the contrary, the transport of a woman across state lines to rape her does indeed comprise an immoral purpose within the Mann Act's purview. *United States v. Mitchell*, 778 F.2d 1271, 1275 (7th Cir. 1985).

**3.** *See People v. Daniels*, 71 Cal.2d 1119, 459 P.2d 225, 80 Cal.Rptr. 897 (1969) (brief movements defendants compelled victims to perform inside premises were merely incidental to crime of robbery and did not comprise kidnapping); *People v. Levy*, 15 N.Y.2d 159, 204 N.E.2d 842, 256 N.Y.S.2d 793 (limited restraint of husband and wife in automobile and movement of car was merely incident to robbery and did not comprise a separate kidnapping offense), *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965).

291–92 & n. 3 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 852, 88 L.Ed.2d 892 (1986). Here, the acquittal shows only that state prosecutors failed to meet their burden of proof. Furthermore, the potential for prejudice was obviously substantial. *Kerley,* 643 F.2d at 300–01; *see also United States v. Sutton,* 732 F.2d 1483, 1493 (10th Cir.1984) (judgment of acquittal is inadmissible hearsay), *cert. denied,* 469 U.S. 1157, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985); Fed.R.Evid. 803(22) (excepting judgments of conviction, not judgments of acquittal, from the hearsay rule).

The contentions of Mr. Young and Mr. Humphrey that prosecutors circumvented the exclusionary order are factually unfounded. We have examined the purported violations suggested by the appellants and find that the government complied with the court's order in all respects. True to the letter of the district court's order, the government referred only to a prior "proceeding" and not to a previous trial. Certainly, this limited reference to the state trial was not sufficient to prejudice Mr. Young's and Mr. Humphrey's defense.

## II

### Claims Raised by Particular Defendants

#### A. *Mr. Jones*

##### 1. Speedy Trial

First, Mr. Jones maintains that the government delayed reindicting him until it was evident that the result of the state prosecution was unsatisfactory. He contends that the delay between his original arrest and reindictment resulted in the unavailability of Mark Wilkins, a witness purportedly present at the scene of the crime, and further caused the memories of his available witnesses to "cloud." For these reasons, he argues that the government has deprived him of rights guaranteed him by the Speedy Trial Clause of the sixth amendment and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*

When the government dismisses criminal charges, any delay in reindictment is not subject to the sixth amendment's speedy trial protections. Rather, any undue delay in reindicting and prosecuting a defendant must be analyzed in a due process framework. *United States v. McDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982); *United States v. Samples,* 713 F.2d 298, 301–02 (7th Cir. 1983). Due process is violated when the government delays an individual's prosecution solely for strategic purposes and that delay substantially prejudices the defense. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *Samples,* 713 F.2d at 302.

In the present case, there is absolutely no evidence that the delay was motivated by bad faith on the prosecution's part or prejudiced Mr. Jones' defense.[4] The two months that intervened between the state acquittal and the federal reindictment were used to obtain Petite Policy approval for Mr. Jones' successive prosecution. Additionally, Mr. Jones' bald assertion that Mark Wilkins became unavailable and other witnesses' memories faded is insufficient to show prejudice. Mr. Jones fails to specify exactly what Mr. Wilkins' testimony would have been, why he was unavailable, or in what sense the others' memories had faded.

Mr. Jones' contention that the preindictment delay violated the Speedy Trial Act is similarly unfounded. The Act provides that any indictment must be had "within thirty days from the date on which such individual is arrested." 18 U.S.C. § 3161(b). However, subsection (h) of section 3161 excludes certain periods of delay

---

**4.** There is a conflict in this circuit as to whether it is the defendant who bears the burden of proving that the government delayed indictment for an impermissible purpose. *United States v. Brock,* 782 F.2d 1442, 1443 n. 1 (7th Cir.1986). Because, however, the reasons for the delay in this case are known and Mr. Jones clearly was not prejudiced by that delay, we need not resolve this conflict. *See Brock,* 782 F.2d at 1443 n. 1; *United States v. Williams,* 738 F.2d 172, 175 n. 1 (7th Cir.1984) (noting but not resolving this conflict).

from the computation of speedy trial deadlines. Subsection (h)(6) provides:

> The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> \* \* \* \* \* \*
>
> If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

Therefore, the government's dismissal of a charge tolls the Act's time limitations. New limitations are instead imposed on the subsequent indictment. *See United States v. Bounos*, 730 F.2d 468, 470–71 (7th Cir. 1984).

### 2. Admission of Prior Testimony

Mr. Jones also asserts that the district court erred by refusing to allow defense counsel to cross-examine Ms. Chambers as to her allegedly inconsistent testimony from the state trial. Upon the objection of the government, the district judge refused to admit statements from the state trial which, defense counsel insisted, were contrary to her present testimony. This testimony concerned information about such matters as the closing time of the restaurant and the particulars of how she was dragged from the car and stripped of her clothing.

■ As Mr. Jones' counsel correctly points out, a witness' prior inconsistent testimony is admissible as non-hearsay pursuant to Fed.R.Evid. 801(d)(1). The two statements need not be diametrically opposed to be inconsistent. *Id.* However, the determination as to whether prior testimony is truly *inconsistent* is a matter within the discretion of the district judge.

*United States v. Williams*, 737 F.2d 594, 608 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). After reviewing the transcript, we cannot say that the district judge abused his discretion by declining to admit the testimony on the ground that there was no real inconsistency.

### 3. Restrictions on Voir Dire

■ Mr. Jones maintains, in a most cryptic fashion, that the trial court was too restrictive of his voir dire of the jury on the question of reasonable doubt because it did not allow defense counsel to probe extensively the jury's understanding of the concept of reasonable doubt. We do not believe the district judge abused the broad discretion to define and restrict the scope of voir dire that is generally afforded a district court. *United States v. Verkuilen*, 690 F.2d 648, 659–60 (7th Cir.1982). Our review of the voir dire proceedings convinces us that, with commendable thoroughness (including an explanation of the concept of reasonable doubt), the trial court took every precaution to ensure that this delicate situation would be tried to a dispassionate jury.

### 4. Pattern Jury Instruction No. 1.07

We reject Mr. Jones' argument that the district court erred by instructing jury members to reflect on their own experience and common sense in weighing the evidence. That instruction is one of this circuit's pattern jury instructions, Federal Criminal Jury Instructions of the Seventh Circuit, Instruction No. 1.07 (1980 ed.). It does not, as Mr. Jones maintains, invite a jury member to consider the evidence in light of personally-held racial stereotypes or prejudices. We note that the defendant points to no attempt on the part of the government to use the instruction to exploit racial prejudice or stereotypes. Indeed, in light of the defendant's defense that he slept through the incident, the government was well within its rights in requesting the instruction.

### 5. Admission of Co-conspirator's Statements

The appellant also argues that the trial court erroneously admitted statements of codefendants that implicated him in the conspiracy. Specific reference is made to only one statement—a vulgar declaration of the driver of the car that all four men intended to rape the victim.

There is absolutely no merit to this contention. First, since no objection was made at trial, the defendant has waived the issue. *United States v. Kennedy*, 797 F.2d 540, 544 (7th Cir.1986). The government had, by the time the statement was admitted, established that it was made in the course of the conspiracy. Because the statement was made in the course of and in furtherance of the conspiracy, it is admissible. Fed.R.Evid. 801(d)(2)(E); *United States v. Coe*, 718 F.2d 830, 835 (7th Cir.1983).

### 6. Sufficiency of the Evidence

█ Finally, Mr. Jones argues that the evidence was insufficient to support his conviction; he claims that he slept through the entire incident and did not participate in either the conspiracy, the kidnapping or the attempted rape. In evaluating the sufficiency of the evidence underlying a conviction, this court is required to view the evidence in the light most favorable to the prosecution. We may determine only whether the record contains sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Reversal is proper only if *no* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Allen*, 797 F.2d 1395, 1398 (7th Cir.1986). Importantly, all questions of credibility and the weight to be afforded conflicting evidence are for the jury to resolve and their conclusions on such matters are accorded tremendous deference. *Id.* at 1399; *see United States v. Noble*, 754 F.2d 1324, 1332 (7th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).

█ Judged by this standard, we conclude that Mr. Jones' conviction is amply supported by the record. His assertion that he slept through the attempted rape presents, at best, an issue of credibility. Although he swore at trial that he slept through the entire incident, the jury, as was its prerogative, obviously chose not to believe him. This decision was eminently reasonable. Indeed, even a cursory review of the facts readily justifies the conclusion that Mr. Jones was a willing participant in the crime.

## B. *Mr. Humphrey*

### 1. Ineffective Assistance of Counsel

Mr. Humphrey contends that the performance of his attorney, Mr. Haine, was constitutionally deficient. On the first day of the trial, Mr. Haine sought leave to withdraw as Mr. Humphrey's attorney. Mr. Humphrey asserts that Mr. Haine did so because he had failed to have any meaningful communication with his client and was unable and unprepared to present a viable defense theory. The district court denied the motion and ordered Mr. Humphrey to proceed to trial.

█ The test for ineffective assistance of counsel is whether counsel's conduct was so deficient as to have undermined the proper functioning of the adversarial process. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Kennedy*, 797 F.2d 540, 543 (7th Cir.1986). An attorney's performance will be deemed constitutionally deficient only if his actions or omissions at trial fall below an objective standard of reasonableness and a reasonable probability exists that, but for his errors, the result of the proceeding would have been different. *Kennedy*, 797 F.2d at 543.

First, we note that, contrary to the defendant's suggestion, the record affirmatively shows that defense counsel had prepared diligently for trial. The motion to withdraw was premised on the defendant's unhappiness with the choice of appointed counsel and his desire to participate more frequently in counsel's preparation. However, as the Supreme Court noted in *Morris*

*v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983):

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See *Chambers v. Maroney,* 399 U.S. 42, 53–54 [90 S.Ct. 1975, 1982, 26 L.Ed.2d 419] (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Id.* at 11–12, 103 S.Ct. at 1616. Indeed, the situation here bears a significant resemblance to *Slappy:*

> In the face of the unequivocal and uncontradicted statement by a responsible officer of the court that he was fully prepared and "ready" for trial, it was far from an abuse of discretion to deny a continuance. On this record, it would have been remarkable had the trial court not accepted counsel's assurances.

*Id.* at 12, 103 S.Ct. at 1616.

Next, there is no basis for the defendant's allegation that Mr. Haine's representation was constitutionally deficient. Mr. Haine observed lengthy portions of the trials of Mr. Humphrey's co-defendants and was fully prepared to present his client's case on the appointed day. He was a competent trial advocate. Mr. Humphrey enumerates no procedural errors on the attorney's part. He does not maintain that Mr. Haine neglected to pursue any investigatory avenues, nor does he specify any defense theory the attorney failed to proffer. Mr. Humphrey's vague allusion to counsel's failure to develop a "viable defense theory" alone does not suffice to show prejudicial error.

## III

### Sentencing Matters

Finally, each of the three appellants challenges his sentence as excessive and an abuse of discretion. Specifically, Mr. Jones, Mr. Young and Mr. Humphrey each argue that the judge failed to give sufficient attention to his personal situation and placed too great an emphasis on deterrence. Each defendant points out that he is a first offender and asserts that his sentence is disproportionate to his crime.

 It is well-settled that the sentencing decision is the unique province of the district court and will not be upset unless it violates applicable statutory limits or the district judge has abused or failed to exercise his sentencing discretion. *Allen,* 797 F.2d at 1402; *United States v. Mitchell,* 788 F.2d 1232, 1237 (7th Cir.1986); *United States v. Marquardt,* 786 F.2d 771, 781 (7th Cir.1986). Here, each defendant's sentence is plainly within the statutory limits—life is the maximum term for kidnapping, 18 U.S.C. § 1201(a). It is clear that the district judge neither abused nor failed to exercise his discretion. The evidence shows each man to have been a willing participant in what was an extraordinarily heinous crime. Ms. Chambers stated that throughout the course of the abduction, she feared for her life. The judge's focus on deterrence did not exceed the bounds of propriety; general deterrence is considered an accepted and valid sentencing factor provided that the sentence is not mechanically imposed. *United States v. Brubaker,* 663 F.2d 764, 769 (7th Cir.1981). The district judge explained that there had recently been a rash of similar cases involving the transport of a victim from St. Louis, Missouri to Illinois for rape or murder. Nothing, however, suggests that the court mechanically predetermined appellants' sentences. *See Mitchell,* 778 F.2d at 1278.

For the reasons stated, the convictions are affirmed.

AFFIRMED.