**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael BOUNOS, John Browning, and Jeffrey Upton, Defendants-Appellants.**

Nos. 82–2429, 82–2434 and 82–2480.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1983.

Decided Jan. 12, 1984.[*]

Opinion March 21, 1984.

---

* This appeal was originally decided by unreported order on January 12, 1984. See Circuit Rule

35. The Court has subsequently decided to issue the decision as an opinion.

James M. Shellow, Shellow, Shellow & Glynn, S.C., Milwaukee, Wis., Frank Oliver, Chicago, Ill., for defendants-appellants.

Howard Pearl, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, ESCH-BACH, Circuit Judge, and CAMPBELL, Senior District Judge.**

WILLIAM J. CAMPBELL, Senior District Judge.

Defendants Michael Bounos, John Browning and Jeffrey Upton appeal their convictions for conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. Defendant Browning also appeals his conviction for unlawful possession of a firearm during the commission of a felony, a violation of 18 U.S.C. § 924(c)(2). The appellants were initially indicted on September 17, 1980. However, on April 10, 1981 the government moved to dismiss the cause without prejudice after it had unsuccessfully sought a continuance of the trial. The court entered an order on April 15, 1981 explaining its reasons for denying the continuance and granting the dismissal without prejudice. Subsequently, the defendants were reindicted and went to trial, nonjury, on June 1–2, 1982. The district court entered findings of fact and conclusions of law determining that the defendants were guilty as charged. [The district court's order is reproduced in the Appendix to this opinion.] Thereafter, the defendants filed this appeal raising numerous issues as to their convictions.

Judge Bua wrote extensive findings of fact detailing the events which formed the basis of the criminal charges, see Appendix, Findings of Fact, paragraphs 1–10. Since the appellants do not challenge any of those findings we will adopt them and proceed to a determination of the issues raised on this appeal.

■ Appellants contend that the prosecution failed to prove that defendants sought to purchase a controlled form of cocaine. The district court stated in its conclusions of law:

6. The Court finds that the clandestine nature of the activities of defendants, and the amount of money involved in the agreement to purchase, supports the inference beyond a reasonable doubt that defendants were conspiring to purchase a controlled substance.

We also note that the use of a huge amount of cash in combination with a concealed firearm is hardly the normal means of transacting legitimate business. In *United States v. Wornock*, 595 F.2d 1121 (7th Cir.), *cert. den.* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979), this court rejected a similar contention with respect to a marijuana conspiracy. Based on the analysis stated therein and the facts noted above we reject the appellants' argument in this case.

■ Appellants' second argument is that the government failed to prove a conspiracy because no agreement was demonstrated and no controlled substance was to be

---

** The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

provided by the government agent. The district court made a specific finding that an agreement was reached including such considerations as the amount of cocaine to be bought, the price, and the "commission" to be paid Manna and Bounos. We find the trial court's determination to be amply supported by the evidence and reject appellants' contention that the testimony only revealed various incidents of negotiations.

■ Appellants rely on *United States v. Binetti*, 552 F.2d 1141 (5th Cir.1977) and *United States v. Oviedo*, 525 F.2d 881 (5th Cir.1976) for their argument that since Vanacora had no intention to provide them with cocaine no illegal conspiracy could be present. However, in each of those cases it was the defendant who was selling the allegedly controlled substance which proved to be a non-controlled substance. The court in *Oviedo* stated:

> Oviedo stated he would sell heroin and then sold procaine. Based on these objective facts, we cannot infer that he intended to do that which he said he was going to do, because he in fact did something else. 525 F.2d at 886.

In this case the defendants were to be the buyers of the controlled substance and since they were unaware that no cocaine would be provided that fact cannot be used to negate their criminal intent.

■ Appellants also argue that the convictions in this case were obtained in violation of the Due Process Clause of the Constitution because the government's conduct consisted of creating a crime simply for the purpose of punishing it. We note that the appellants do not suggest that they were not predisposed to commit the crimes, rather they contend that DEA Agent Vanacora's conduct exceeded the permissible role of a government agent, citing *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978). In that case the court held that the government's conduct in initiating, financing and supervising the operation of an illicit drug laboratory was sufficiently outrageous to warrant vacating the resulting convictions. The decision relied on the reasoning suggested in Justice Powell's concurring opinion in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976):

> [I]n evaluating whether government conduct is outrageous, the court must consider the nature of the crime and the tools available to law enforcement agencies to combat it. 588 F.2d at 378 fn. 6 citing *Hampton*, 425 U.S. at 495–96 fn. 7, 96 S.Ct. at 1653 n. 7.

Applying that reasoning, the court in *Twigg* noted:

> *Hampton* was concerned with the sale of an illegal drug, a much more fleeting and elusive crime to detect than the operation of an illicit drug laboratory. In such a situation the practicalities of combating drug distribution may require more extreme methods of investigation, including the supply of ingredients which the drug ring needs. 588 F.2d at 378 [Footnote deleted].

This case involves the sale of drugs and while Vanacora was an active participant we find his conduct neither extreme nor outrageous.

■ An additional argument of the appellants is that the dismissal/reindictment procedure utilized by the government in this case violated the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* Subsection (h) of § 3161 lists certain periods of delay which are to be excluded in computing the speedy trial deadlines, and subsection (h)(6) provides:

> (6) If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

Appellants contend that this subsection excludes the time period between a dismissal and reindictment only when the government has a good faith basis for the dismissal. The statutory language does not sup-

port this construction and no court has required such a showing from the government.[1] Rather, the courts have applied the provision as it is written with the only limitation being the omnipresent constitutional speedy trial considerations, see United States v. Hicks, 693 F.2d 32 (5th Cir.), cert. den., 459 U.S. 1220, 103 S.Ct. 1226, 75 L.Ed.2d 461 (1983); United States v. Rodriguez-Restrepo, 680 F.2d 920 (2d Cir. 1982); United States v. Abernathy, 688 F.2d 576 (8th Cir.1982). The appellants have demonstrated no prejudice from the delay between the dismissal and the reindictment. They briefly suggest that the reindictment was motivated by the government's intention to retaliate against them for resisting conviction in a related case. However, the record provides no support for this contention, nor does it relate to any prejudice caused by the delay between dismissal and reindictment. They also note the pendency of a civil forfeiture proceeding relating to the money seized in this case, but again that allegation does not relate to speedy trial considerations.

■ Appellant Upton presents two additional arguments. He contends that the dismissal/reindictment procedure authorized by § 3161(h)(6) violates his constitutional right to speedy trial as enunciated in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In that case, the Court addressed the constitutionality of a state procedure whereby the prosecutor could, by filing a nolle prosequi "with leave", indefinitely postpone prosecution of a defendant despite the objection of the accused. The Klopfer opinion stands for two major principles. The first is that the Speedy Trial provision of the Sixth Amendment applies to the states through the Fourteenth Amendment. The second aspect of the holding is that the nolle prosequi "with leave" violated the Speedy Trial provision of the Sixth Amendment. The first proposition is obviously unrelated to this case. The numerous distinctions between the dismissal/reindictment procedure and the nolle prosequi "with leave" renders the second proposition irrelevant. Under the North Carolina procedure discussed in Klopfer, once the petition for nolle prosequi "with leave" was granted the decision whether to proceed to trial was solely a matter in the prosecutor's discretion. There were no means by which the accused could compel the state to try him. Furthermore, the statute of limitations was tolled, thus creating the potential for a truly indefinite postponement of trial. The result was, as noted in United States v. MacDonald, 456 U.S. 1, 102 S.Ct. 1497, 1506, 71 L.Ed.2d 696 (1982), that the charges were never really dismissed. However, under the dismissal/reindictment procedure authorized by § 3161(h)(6), the accused is protected by the Speedy Trial Act provisions, which apply to the new indictment, and the constitutional speedy trial considerations discussed in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Therefore, we cannot conclude that the principles of Klopfer prohibit the procedure used in this case.

■ Upton's second contention is that the Speedy Trial Act represents an unconstitutional invasion upon the autonomy of the Judiciary by the legislative authority in derogation of the doctrine of the separation of powers.[2] While it is certainly refreshing

1. We do not intend to imply that the government's conduct in this case was motivated by bad faith. The government had initially sought a continuance of the trial because the case agent was concurrently involved in other undercover operations and it feared the public exposure at the trial might jeopardize those investigations. After reviewing the motion and the in camera submissions the district court concluded that "substantial reasons were offered in support of the government's request," Order, April 15, 1981. However, Judge Bua determined that the government's showing was insufficient to justify a sixty-day continuance in light of the provisions of the Speedy Trial Act. Thereafter, the government moved to dismiss the cause without prejudice. We perceive no evidence of bad faith in the government's conduct regarding the dismissal or the subsequent reindictment.

2. This argument was rejected on the merits in United States v. Brainer, 691 F.2d 691 (4th Cir. 1982). We note that in that case it was the government that attacked the Speedy Trial Act on the basis that it unconstitutionally infringed the autonomy of the Judiciary.

to have a criminal defendant eager to defend the autonomy of the Judiciary, we conclude that we need not reach this argument. If we were to hold the Act unconstitutional, our analysis in this case would revert to the application of the constitutional speedy trial principles enunciated in *Barker v. Wingo, supra* and its progeny. However, we have already concluded that the appellants have failed to demonstrate that, under the facts of this case, the dismissal/reindictment procedure violated their constitutional rights to a speedy trial. Therefore, it would be superfluous for us to address the contention that the Speedy Trial Act unconstitutionally impairs the autonomy of the Judiciary.

For the reasons discussed above, the judgments of the district court are affirmed.

### APPENDIX

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JOHN MAX BROWNING,<br>JEFFREY DWIGHT UPTON,<br>AUGUST CARMAN MANNA, and<br>MICHAEL ANASTACIOUS BOUNOS | No. 80 CR 490<br>Honorable<br>**Nicholas J. Bua,**<br>*Presiding* |

### ORDER

John Browning, Jeffrey Upton, August Manna, and Michael Bounos (hereinafter referred to as defendants), have been charged by indictment of conspiring to possess with intent to distribute a Schedule II Controlled Substance, Cocaine, in violation of Title 21, United States Code, §§ 841(a)(1) and (b). In addition, defendant Browning has been charged with the unlawful possession of a firearm during the commission of a felony in violation of Title 18, United States Code, § 924(c)(2). This cause was tried to the Court sitting as the trier of fact on June 1, and 2, 1982. The Court accordingly makes the following findings of facts and conclusions of law.

### FINDINGS OF FACT

1. On April 1, 1980, a meeting was conducted between Drug Enforcement Administration Agent Joseph Vanacora (hereinafter "Agent Vanacora") and Defendant Bounos. At this meeting, Agent Vanacora represented himself to be a distributor of cocaine. Defendant Bounos represented himself to be an interested prospective buyer. The subject of this meeting was the purchase of cocaine by Defendant Bounos from Agent Vanacora. In the course of this meeting, Defendant Bounos questioned Agent Vanacora concerning the price, purity, and quality of cocaine which could be purchased. Agent Vanacora expressed an interest in selling, and Defendant Bounos an interest in purchasing, approximately 10 kilos of cocaine at a price of $50,000 per kilo. This meeting took place at Bennigan's Restaurant in Oak Brook, Illinois (hereinafter referred to as Bennigan's). Defendant Bounos invited Agent Vanacora to meet again at Bennigan's on April 4, 1980.

2. On April 4, 1980, a meeting was conducted between Agent Vanacora and Defendants Bounos and Manna at Bennigan's. Defendant Bounos reiterated his interest in purchasing a large quantity of cocaine, but stated that he would have to first raise the money. Defendant Manna stated that "probably in time they might be able to arrange the financing." Defendant Bounos then inquired about purchasing smaller amounts of cocaine, and/or purchasing the cocaine at its source, in order to reduce the total cost. Agent Vanacora indicated that he would be interested in selling quantities of cocaine in smaller amounts and that it could be arranged to be transferred at its source, however, he insisted that he see the purchase money (hereinafter referred to as a "flash roll") in Chicago. Agent Vanacora obtained Bounos' and Manna's telephone numbers at this time.

3. Between April 4, 1980 and June 4, 1980, Agent Vanacora attempted to contact Defendants Bounos and Manna by telephone on numerous occasions. Many of these attempts to contact the defendants were unsuccessful. Agent Vanacora did, however, meet with Defendants Bounos

and Manna three or four times during this period. Defendants were unable to produce the "flash roll" as requested by Agent Vanacora. In late May, 1980, the investigation was closed because of the limited activity that had taken place. An additional meeting was arranged to take place, however, on June 4, 1980 between Agent Vanacora and Defendants Bounos and Manna.

4. On June 4, 1980, Defendants Bounos and Manna met with Agent Vanacora at a Poppin Fresh Restaurant in Villa Park, Illinois. Further discussions were had concerning the sale and purchase of cocaine. Defendant Bounos informed Agent Vanacora that he had acquired enough money to purchase one kilo of cocaine. Agent Vanacora informed Defendant Bounos that the price would be $60,000 per kilo if purchased in a quantity of less than ten kilos, and Defendant Bounos replied that he would have the money in a few days. Subsequent to this meeting, several telephonic communications took place between Agent Vanacora and Defendant Bounos. During a June 30th conversation, Defendant Bounos stated that it was important that he meet with Agent Vanacora immediately.

5. On July 1, 1980, Agent Vanacora met with Defendant at his residence in Bloomingdale, Illinois. At this meeting, Defendant Bounos informed Agent Vanacora that he had $40,000 available for the purchase of cocaine and inquired if he could purchase less than one kilo. Agent Vanacora responded that he would not sell a quantity less than one kilo and suggested that Defendant Bounos obtain backers or other interested purchasers to complete the transaction.

6. On July 11, 1980, another meeting was arranged and conducted at Defendant Bounos' residence. The subject of this meeting was whether Agent Vanacora would be willing to meet some individuals who would be interested in financing the purchase of cocaine. Agent Vanacora agreed to meet with these individuals whenever Bounos and Manna arranged a meeting.

7. On July 21, 1980, Agent Vanacora again met with Defendant Bounos at his apartment. At this meeting, Defendant Bounos assured Agent Vanacora that his financial backers were trustworthy and that they would be interested in purchasing three kilograms of cocaine.

8. On July 24, 1980, Agent Vanacora met with Defendants Bounos and Manna at Hobo's Restaurant in Oakbrook Terrace, Illinois. Defendant Browning also participated in this meeting and represented that he was interested in purchasing cocaine and that he could purchase ten kilograms per order. A discussion followed concerning the quality and appearance of the cocaine, and Agent Vanacora again insisted that he be shown the "flash roll" prior to delivery. Browning stated that he wanted to purchase three kilos if he could obtain a reduction in price. Agent Vanacora and Defendant Browning agreed to make further arrangements and meetings through Defendants Bounos and Manna.

9. On August 14, 1980, Agent Vanacora met with Defendants Manna, Browning, and Upton at Mr. Hobo's Restaurant. Browning introduced Upton as his partner. Upton acquiesced in this description. The meeting continued in Defendant Manna's vehicle. At this time, Browning asked the price of three kilos of cocaine, and Agent Vanacora stated that the price would be $59,000 per kilo. Vanacora also added that Defendants Bounos and Manna were to each receive $10,000 for setting up the transaction. Defendant Browning objected to this, it was finally agreed by Defendants Manna, Browning and Upton that Manna and Bounos would receive three ounces of cocaine. The price per kilo was then reduced to $54,500. Browning stated that he would have the money in four or five days. Additional discussion was had over where the exchange would take place.

10. On August 19, 1980 at 5:00 P.M., Manna met Agent Vanacora at Bennigan's. Manna informed Agent Vanacora that Browning and Upton were waiting at a pre-arranged location. Vanacora and Manna discussed Upton and Browning's busi-

ness relations, and Manna stated that to his knowledge they were only partners in the cocaine "business." Upon their arrival, Upton exited a parked vehicle carrying two suitcases. Subsequently, Browning entered this vehicle, removed an object, and placed it in his waistband. All entered Agent Vanacora's vehicle and Agent Vanacora then drove in the general vicinity. Browning informed Agent Vanacora that he had $86,000 with him. Agent Vanacora and Browning had a discussion about the amount of cocaine to be purchased. Browning then placed an attache case upon his lap and Upton assisted him in displaying the "flash roll." This case was then passed to the front seat to enable Manna to show Agent Vanacora the contents. Further discussion was had concerning the amount of cocaine to be purchased. Defendants then agreed to complete the transaction the following Friday at 7:00 A.M. Agent Vanacora then drove to the original meeting place and gave a pre-arranged arrest signal. Vanacora arrested Browning, retrieved a Colt .45 from Browning's waistband, and turned Defendant Browning over to the surveillance agents. Agent Magrames arrested Defendant Manna, and Agents Tucci and Lopez arrested Defendant Upton.

11. The Court finds that the transactions described were simple in nature and that Agent Vanacora's ability to recall the events was excellent.

12. The Court finds that Agent Vanacora's conduct in pursuing this investigation was not so outrageous as to shock the Court's sense of fairness. In addition, the Court finds that all of the defendants, based upon their willingness to participate in this scheme, were predisposed to engage in an agreement to purchase a controlled substance.

13. The Court finds that the defendants, each of them, had entered an agreement to purchase a controlled substance, cocaine.

14. The Court finds that defendants intended to purchase the quantities of cocaine desired for distribution.

## CONCLUSIONS OF LAW

1. In order to establish violations of Title 21, U.S.C. § 846, the government must prove beyond a reasonable doubt that an agreement exists between two or more persons to commit offenses under the Controlled Substances Act.

2. In order to establish violations of Title 21, U.S.C. § 846 which prohibits conspiracies to violate the act, the government need not prove an overt act in the furtherance of the conspiracy. *U.S. v. Cartwright [Cortwright]*, 528 F.2d 168, 172 (7th Cir. 1975).

3. The fundamental element of a conspiracy is an agreement between two or more persons. The government need not prove the formalities of the agreement and the existence of the agreement and the conspiracy may be proven by circumstantial evidence. *U.S. v. Page*, 580 F.2d 916 (7th Cir.1978); *Young v. U.S.*, 444 U.S. 994 [100 S.Ct. 530, 62 L.Ed.2d 425] (1979).

4. In addition, where there is an overall agreement among the parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement of the parties constitutes a single conspiracy. *U.S. v. Varelli*, 407 F.2d 735 (7th Cir.1969).

5. The Court finds that the government has proven beyond a reasonable doubt that each of the defendants was involved in a conspiracy to knowingly and intentionally possess with intent to distribute cocaine, a Schedule II Controlled Substance in violation of Title 21, U.S.C. § 841(a)(1).

6. The Court finds that the clandestine nature of the activities of defendants, and the amount of money involved in the agreement to purchase, supports the inference beyond a reasonable doubt that defendants were conspiring to purchase a controlled substance. In addition, the Court finds that, as a matter of law, defendants' impossibility defense is inapplicable. *U.S. v. Ouijada [Quijada]*, 588 F.2d 1253 (9th Cir. 1979). See also: *U.S. v. Wornock*, 595

F.2d 1121 (7th Cir.1979); *U.S. v. Tramonti [Tramunti]*, 513 F.2d 1087 (2nd Cir.1975).

7. The Court finds that as a matter of law Agent Vanacora's activities in connection with this investigation do not violate our due process notions of fundamental fairness, nor do they shock our sense of justice. *U.S. v. Russell*, 41 [411] U.S. 423 [93 S.Ct. 1637, 36 L.Ed.2d 366] (1973).

8. The Court finds that all of the defendants were predisposed to commit the offense charged, that Agent Vanacora merely afforded defendants the opportunity to commit the offense, and that therefore the defense of entrapment fails as a matter of law. See generally: *U.S. v. Guevara*, 598 F.2d 1094 (7th Cir.1979).

9. The Court denies Defendant Browning's motion for arrest of judgment on grounds of alleged violations of the Speedy Trial Act for the reasons previously set forth in the Court's pre-trial disposition of this argument.

10. The Court finds that in addition to establishing the existence of an agreement between all defendants, the government has established numerous acts in the furtherance of this agreement in the form of meetings and the production of money to facilitate defendants' conspiratorial objectives.

11. The Court finds that the government has proven beyond a reasonable doubt Defendant Browning's violation of Title 18, U.S.C. § 924(c)(2) in that he unlawfully carried a firearm during the commission of a felony.

12. For the foregoing reasons, the Court finds that the defendants are guilty of the offenses charged in the indictment and accordingly enters a judgment of guilty.

IT IS SO ORDERED.

/s/ Nicholas J. Bua

Nicholas J. Bua
Judge, United States District Court

Dated: July 28, 1982.