Steve SCHONBERG, Plaintiff,

v.

**FEDERAL ELECTION COMMISSION et al., Defendants.**

**Civil Action No. 10–2040 (RWR).**

United States District Court, District of Columbia.

June 23, 2011.

Steve Schonberg, Ocala, FL, pro se.

David Brett Kolker, Robert William Bonham, III, Vivien Clair, Harry Jacobs Summers, Federal Election Commission, Rhonda Lisa Campbell, U.S. Department of Justice, Washington, DC for Defendants.

## MEMORANDUM OPINION

RICHARD W. ROBERTS, District Judge.

Pro se plaintiff Steve Schonberg brings this action against the Federal Election Commission ("FEC") and the United States, challenging the constitutionality of provisions of the Federal Election Campaign Act of 1971 ("FECA") and the Bipartisan Campaign Reform Act of 2002 ("BCRA"); the statute governing representational allowances for Members of the House of Representatives ("MRA"), codified at 2 U.S.C. § 57; and legislation commonly referred to as "earmarks." Schonberg has moved to trifurcate the proceedings, and the defendants have each moved to dismiss. Schonberg has not shown that he has standing to bring his FECA and BCRA claims, the United

States has not waived its sovereign immunity with respect to his MRA and earmarks claims, and even if the United States had waived its sovereign immunity, Schonberg has failed to establish that the MRA or earmarks violate the Constitution. Therefore, the defendants' motions to dismiss will be granted, and Schonberg's motion to trifurcate will be denied.

## BACKGROUND

The background of this case is discussed fully in *Schonberg v. FEC,* Civil Action No. 10–2040, 792 F.Supp.2d 14, 2011 WL 2441313 (D.D.C. May 12, 2011) (per curiam). Briefly, Schonberg is a Florida resident who ran unsuccessfully for the House of Representatives in Florida's Sixth Congressional District and who has expressed his intention to run again for the seat in 2012. *Id.* at 15–16, at *1. Schonberg's second amended complaint claims that FECA, BCRA, the MRA,[1] and legislation earmarking[2] funds for the College of Central Florida and the University of Florida provided the incumbent, Congressman Cliff Stearns, an unconstitutional competitive advantage in 2010 and will continue to provide that advantage to him in the 2012 election. (2d Am. Compl. ¶¶ 17, 32–44, 166–75, 186–89, 203, 219–23, 229, 233, 248.) When he filed his original complaint, Schonberg also filed an application for a three-judge court to adjudicate his claims, which was granted. After the three-judge court was convened, Schonberg amended his complaint and filed a motion to trifurcate his claims, arguing that his BCRA claims were properly before the three-judge court, but that the Court of Appeals sitting en banc should adjudicate his FECA claims and that a single district judge should adjudicate his MRA and earmark claims. Schonberg then filed a second amended complaint, the FEC moved to dissolve the three-judge court and to dismiss the complaint, and the United States moved to dismiss the complaint. The three-judge court granted the FEC's motion to dissolve the three-judge court and returned the motions to dismiss and to trifurcate to this Court. The FEC moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss arguing that there is no subject-matter jurisdiction over Schonberg's FECA and BCRA claims because he lacks standing. The United States moves under Rules 12(b)(1) and 12(b)(6) to dismiss arguing that there is no subject-matter jurisdiction over Schonberg's MRA and earmarks claims because the United States has not waived its sovereign immunity from suit, and that Schonberg has failed to state a claim.

## DISCUSSION

### I. FECA AND BCRA CLAIMS

 "On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the bur-

---

1. The MRA is the funding provided to members of the House of Representatives to operate their offices, both in the District of Columbia and in their home districts. *See generally* Ida A. Brudnick, Cong. Research Serv., R40962, Members' Representational Allowance: History and Usage (2011).

2. An earmark is

 a provision or report language included primarily at the request of a Member, Delegate, Resident Commissioner, or Senator providing, authorizing or recommending a specific amount of discretionary budget authority, credit authority, or other spending authority for a contract, loan, loan guarantee, grant, loan authority, or other expenditure with or to an entity, or targeted to a specific State, locality or Congressional district, other than through a statutory or administrative formula-driven or competitive process.

 House Rule XXI, cl. 9(e), 112th Congress (2011).

den of establishing that the court has subject-matter jurisdiction." *Larsen v. U.S. Navy*, 486 F.Supp.2d 11, 18 (D.D.C.2007); *see also Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C.Cir.2007). A court "must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party." *Short v. Chertoff*, 526 F.Supp.2d 37, 41 (D.D.C. 2007). Although a court is to construe liberally a pro se complaint, *Howerton v. Ogletree*, 466 F.Supp.2d 182, 183 (D.D.C. 2006), "[p]ro se plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." *Gomez v. Aragon*, 705 F.Supp.2d 21, 23 (D.D.C.2010).

 "[A] showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C.Cir.1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In order for a plaintiff to establish standing to bring a constitutional claim, Article III requires the plaintiff to show an injury in fact, that the conduct complained of caused the injury, and that it is likely, and not merely speculative, that the relief the plaintiff seeks would redress the injury. *See Ariz. Christian Sch. Tuition Org. v. Winn*, —— U.S. ——, 131 S.Ct. 1436, 1442, 179 L.Ed.2d 523 (2011) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130 (quoting *Allen v. Wright*, 468 U.S. 737, 758, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

With respect to Schonberg's FECA and BCRA claims, the injuries of which he complains are that the campaign finance regime as currently enacted unfairly advantages incumbents in federal elections and has prevented the United States from enacting universal, affordable health care. (2d Am. Compl. ¶¶ 16–29, 33, 37, 89–104.) However, even if FECA and BCRA were to be found to be

> a legal nullity in all [their] iterations, this result would not further Schonberg's goal of more stringent regulation of the federal campaign finance system and elimination of the alleged competitive advantages for incumbent federal candidates. Without a statute specifying permissible and impermissible uses of federal campaign contributions, the Constitution would be the only source for controlling legal authority governing relevant conduct, *see United States v. Bounos*, 730 F.2d 468, 472 (7th Cir. 1984), aside from federal statutory prohibitions on bribery and the like and various state laws regarding federal elections. Schonberg has made no showing that federal candidates, free from the constraints imposed by [FECA or BCRA] would be *more* restricted in their use of campaign funds, or that the Constitution itself forbids the pecuniary evils of the federal campaign finance system that he alleges persist. To the contrary, removing these limits would exacerbate, rather than remedy, the perceived ills.

*Schonberg*, 792 F.Supp.2d at 19, 2011 WL 2441313, at *4. Accordingly, holding FECA or BCRA unconstitutional is not likely to redress Schonberg's claimed injuries.[3] He therefore has failed to establish standing

---

**3.** Schonberg also claims that FECA, by creating campaign committees that can accept

campaign contributions, violates the Appointments, Ascertainment, and Emoluments

over his FECA and BCRA claims, and the FEC's motion to dismiss will be granted.[4]

## II. MRA AND EARMARK CLAIMS

Schonberg also challenges the constitutionality of the MRA and legislative earmarks. He claims that the MRA disadvantages him as a challenger by providing the incumbent member of Congress against whom he is running with taxpayer funding for a website and staff, which aids the incumbent's prospects for reelection. (2d Am. Compl. ¶¶ 30–32, 36, 38–40, 42, 44, 105–32.) Schonberg also claims that the two earmarks he challenges provided the incumbent with an unfair advantage relative to challengers, in violation of the Equal Protection Clause, and with "unconstitutional compensation" by encouraging others to provide job opportunities to the incumbent's wife and sporting tickets to the incumbent, and to name buildings after the incumbent.[5] (*Id.* ¶¶ 229–30.)

Clauses of the Constitution. (2d Am. Compl ¶¶ 205–17.) The Emoluments Clause provides that "no Person holding any Office under the United States, shall be a Member of either House [of Congress] during his Continuance in Office." U.S. Const. Art. I, § 6, cl. 2. The Appointments Clause vests in the President the power to appoint "Officers of the United States" but provides that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. Art. II § 2, cl. 2. Schonberg appears to claim that incumbents act as "officers" of their campaign committees and therefore hold an "office," in violation of both the Appointments and Emoluments Clauses. Arguably, a favorable decision might redress any competitive disadvantage Schonberg suffers from the existence of campaign committees, since such committees would not exist absent their authorization in FECA.

However, in *Buckley v. Valeo*, 424 U.S. 1, 124–26, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court analyzed together the Appointments and Emoluments Clauses and concluded that to qualify as an officer of the United States, an appointee must "exercis[e] significant authority pursuant to the laws of the United States[.]" Because Schonberg provides no authority for the proposition that incumbents exercise any, yet alone significant, authority of the United States as agents of their campaign committees, he has failed to plead a violation of either the Appointments or the Emoluments Clauses. Moreover, to the extent that Schonberg pleads that benefits incumbents derive from their campaign committees constitute compensation, Schonberg has not pled a violation of the Ascertainment Clause, which does not provide a substantive limit on the amount or Congressional source of members' compensation. *See infra* II(B)(2).

4. In his motion to trifurcate, Schonberg argues that his FECA claims should be heard by the United States Court of Appeals for the District of Columbia Circuit sitting en banc. *See* 2 U.S.C. § 437h ("The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc."). "Despite the mandatory phrasing of the certification provision, district courts presented with complaints brought under section 437h need not automatically certify every constitutional question raised to the en banc court of appeals." *Mott v. FEC*, 494 F.Supp. 131, 133 (D.D.C.1980). Rather, the procedure is "circumscribed by the constitutional limitations on the jurisdiction of the federal courts[,]" including the requirement that a party have standing to raise a constitutional claim. *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n. 14, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981). Because Schonberg lacks standing, his constitutional FECA claims will not be certified to the court of appeals sitting en banc, and his motion to trifurcate will be denied.

5. In addition to challenging these two particular earmarks, Schonberg seeks a prospective declaration that any future earmark obtained by Stearns during the 112th Congress be declared unconstitutional. (2d Am. Compl. at 65.) However, Schonberg's challenge to the constitutionality of future earmarks does not present a justiciable case or controversy. "Article III, section 2 of the Constitution limits federal courts to deciding actual, ongoing controversies." *21st Century Telesis Joint Ven-*

## A. Sovereign immunity

■ Because the United States' consent to be sued in a particular court defines the scope of that court's jurisdiction, "[a]bsent a waiver, sovereign immunity shields the Federal Government ... from suit." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). A waiver of sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (internal citation omitted). "[C]onditions upon which the Government consents to be sued must be strictly observed[,]" *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quotation marks and citation omitted), and any waiver is construed strictly in the sovereign's favor. *Lane*, 518 U.S. at 192, 116 S.Ct. 2092.[6]

■ However, it "is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional[.]" *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C.Cir.1984); *see also Larson v.*

*Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (reasoning that where a "statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional[,]" "the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign"). Here, Schonberg has not styled his suit as one against a government official, but rather as one against the United States. Even a liberal construction of his complaint does not yield a readily apparent officer or agency against whom or which he seeks specific relief. *Cf. Clark*, 750 F.2d at 102 (holding that plaintiff's claim was not barred by sovereign immunity because he sought specific relief against a government official). His claim, therefore, will be barred by sovereign immunity if no unequivocally expressed waiver exists.

■ The Administrative Procedure Act ("APA") provides that "[t]he United States may be named as a defendant" in an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority[.]" 5 U.S.C. § 702. This provision waives the government's immunity from suit. *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C.Cir.2006). Although

---

ture *v. FCC*, 318 F.3d 192, 198 (D.C.Cir.2003) (internal quotation marks omitted). Accordingly, federal courts are prohibited from rendering advisory opinions and from resolving issues that "cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). For there to be subject-matter jurisdiction over a claim, therefore, a judgment must resolve a real and substantial controversy and not rely on a hypothetical set of facts. *Id.* Because "the opinion of a court on hypothetical Acts of Congress ... would be difficult to characterize as anything but advisory[,]" *U.S. Nat'l Bank of Or. v. Ind. Ins.*

*Agents of Am., Inc.*, 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), there is no subject-matter jurisdiction over Schonberg's challenge to earmarks he believes may be enacted in the future.

6. *But see Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008) (noting that the "sovereign immunity canon is just that—a canon of construction" and that it does not "displace[ ] the other traditional tools of statutory construction").

Schonberg does not bring his claims under the APA, there "is nothing in the language of ... § 702 that restricts its waiver to suits brought under the APA." *Id.* However, the APA's waiver of sovereign immunity applies only to suits for specific relief against an agency or officer acting or failing to act in an official capacity. Nowhere in his complaint does Schonberg identify an agency that, or an officer of the United States who, acted or failed to act in a way that implicates the constitutionality of the MRA or earmarks. Rather, Schonberg argues in his opposition that the "members of the House of Representatives cannot pass a law that is a violation of" the Constitution. (Pl.'s Resp. in Opp'n to Def. United States' Mot. to Dismiss ("Pl.'s Opp'n") at 11.) Because the APA explicitly excludes Congress from its definition of an agency, 5 U.S.C. § 701(b)(1)(A), it does not waive sovereign immunity for Schonberg's claims. *See Clark,* 750 F.2d at 102. Schonberg has not established that sovereign immunity does not bar his claim, nor has he established that the United States has waived its sovereign immunity in this context, and the United States' motion to dismiss for lack of subject matter jurisdiction will be granted. Even if sovereign immunity did not bar Schonberg's MRA and earmarks claims, however, they would still fail on the merits.

### B. *Failure to state a claim*

 The United States also has moved to dismiss Schonberg's MRA claims under Rule 12(b)(6) for failure to state a claim. "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton,* 292 F.3d 235, 242 (D.C.Cir. 2002). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, *id.,* and "the court must assume the truth of all well-pleaded allegations."

*Warren v. Dist. of Columbia,* 353 F.3d 36, 39 (D.C.Cir.2004).

### 1. Equal protection

 "Unless a classification ... is drawn upon inherently suspect distinctions such as race, religion, or alienage," statutory distinctions are presumed constitutional, and will survive a challenge if the classification is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Although not every non-suspect legislative classification passes muster under rational basis review, *see, e.g., Metro. Life Ins. Co. v. Ward,* 470 U.S. 869, 882, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (holding that a preferential state tax rate for domestic businesses violated the Equal Protection Clause because the state's justifications—that the tax promoted domestic industry and encouraged investment in domestic assets—were not legitimate government interests since if they were, "any discriminatory tax would be valid if the State could show it reasonably was intended to benefit domestic business"), "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations[.]" *Dukes,* 427 U.S. at 303, 96 S.Ct. 2513.

Schonberg alleges that the MRA and earmarks violate the equal protection component of the Fifth Amendment by discriminating against challengers in favor of incumbents. (2d Am. Compl. ¶¶ 222, 229.) Schonberg provides no authority for the proposition that a statute that provides benefits to an incumbent but not a challenger draws a suspect classification, and other courts have explicitly rejected the notion that such a classification is suspect. *See, e.g., El–Amin v. State Bd. of Elections,* 717 F.Supp. 1138, 1140 (E.D.Va. 1989) (concluding that although the "plain-

tiffs claim that the statute denies equal protection ... because ... incumbents receive preferential treatment[,]" the statute was not subject to strict scrutiny because "it does not make a 'suspect classification'"). Therefore, so long as the MRA and the challenged earmarks are rationally related to a legitimate government interest, they will pass muster under the Equal Protection Clause. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("In areas of ... economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

The MRA provides a member of the House of Representatives with funding to compensate and provide benefits to staff members, to rent and maintain a district office, and to pay for travel, printing, supplies, shipping, equipment, and franking expenses. *See* Ida A. Brudnick, Cong. Research Serv., R40962, Members' Representational Allowance: History and Usage 9–10 (2011). Such funding allows representatives "to operate their offices in a way that supports their congressional duties and responsibilities[.]" *Id.* at 1; *see also Gravel v. United States*, 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (noting that "it is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants"). There is plainly a legitimate government interest in ensuring that members of the House of Representatives are able to carry out their duties and responsibilities, and it is easy to conclude that

providing such funding to members of Congress and not to non-members of Congress is rationally related to this interest. Schonberg therefore has failed to state an equal protection claim with respect to the MRA.

Similarly, there is a legitimate government interest in exercising Congress' appropriation authority to provide funding for higher education institutions. *See Buckley v. Valeo*, 424 U.S. 1, 90, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("It is for Congress to decide which expenditures will promote the general welfare[.]"). Granting authority to members of Congress but not to non-members of Congress to spend federal funds is rationally related to this interest. Schonberg therefore has failed to state an equal protection claim with respect to the challenged earmarks.

### 2. Ascertainment Clause

■ The Ascertainment Clause provides that members of Congress "shall receive a Compensation for their services, to be ascertained by Law, and paid out of the Treasury of the United States." U.S. Const. Art. 1 § 6, cl. 1. Schonberg claims that the MRA violates the Ascertainment Clause by providing "compensation over and above that contained in the [Ascertainment] Clause." (Pl.'s Opp'n at 11.) Schonberg also claims that the school earmarks he challenges provided Stearns with "unconstitutional compensation" by encouraging others to provide job opportunities to Stearns' wife and sporting tickets to Stearns, and to name buildings after Stearns. (2d Am. Compl. ¶ 230.) However, Schonberg cites no authority for the proposition that the Ascertainment Clause provides any substantive limit on the amount or Congressional source of member compensation. Rather, the clause merely creates the procedural requirement that Congress set its own pay rather

than delegating that task to other bodies, such as state legislatures. *See Humphrey v. Baker*, 848 F.2d 211, 215 (D.C.Cir.1988) (citing *Pressler v. Simon*, 428 F.Supp. 302 (D.D.C.1976), for the proposition that "the animating purpose of the Ascertainment Clause" is "to affix political responsibility for the level of Members' pay ultimately with Congress itself"). Even if Schonberg could demonstrate that the clause imposes a substantive limit on member compensation, the MRA would not violate such a limit, as it does not fund member salaries. *See* Members' Representational Allowance at 10. Nor do the benefits Schonberg asserts that Stearns has derived from earmarks—even if Schonberg could succeed in proving a causal connection between the earmarks and the benefits—constitute member salary. Schonberg has therefore failed to state a claim that the MRA or the school earmarks he challenges violate the Ascertainment Clause.

## CONCLUSION

Schonberg has not established that he has standing for his BCRA and FECA claims, nor has he demonstrated that the government has waived its sovereign immunity or that he has stated a claim with respect to his MRA and earmark claims. Accordingly, the defendants' motions [33, 34] to dismiss will be granted, and Schonberg's motion [24] to trifurcate proceedings will be denied. An appropriate Order accompanies this Memorandum Opinion.